UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

May 10, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Trina L. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1032-BAH

Dear Counsel:

On April 27, 2022, Plaintiff Trina L. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 10), the parties' briefs (ECFs 13 and 15), and Plaintiff's reply brief (ECF 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.     **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on June 28, 2016, alleging a disability onset of June 9, 2014. Tr. 214–20. Plaintiff's claim was denied initially and on reconsideration. Tr. 130–33, 141–47. On June 12, 2018, an Administrative Law Judge ("ALJ") held a hearing. Tr. 36–79. Following the hearing, on July 5, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 12–35. After the Appeals Council denied Plaintiff's request for review, Tr. 1–6, Plaintiff sought judicial review in this Court. Tr. 775–80. On July 21, 2020, this Court remanded Plaintiff's case back to the SSA. *Id.*

On August 13, 2021, the Appeals Council vacated the ALJ's July 5, 2018, decision and remanded Plaintiff's case to an ALJ for further proceedings. Tr. 829–32. The Appeals Council also consolidated Plaintiff's claim with a subsequent SSI claim which Plaintiff filed on April 4, 2019. *Id.* A second hearing was held on December 16, 2021. Tr. 697–738. On January 27, 2022, the ALJ again determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 666–96. This decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. § 416.1484(d); *see also id.* § 422.210(a).

---

[1] 42 U.S.C. §§ 301 et seq.

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2016. Tr. 672. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "obesity, asthma, chronic obstructive pulmonary disease (COPD), schizoaffective disorder, schizophrenia, affective disorder, anxiety disorder, personality disorder and post-traumatic stress disorder (PTSD)." *Id*. (citation omitted). The ALJ also found that Plaintiff suffered from the non-severe impairments of "a great toe injury," "a left-hand injury," "syncope and numbness," "sequalae from an ankle injury," "a spine disorder," and "past substance abuse." Tr. 673. At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 674. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; she is capable of occasionally balancing, stooping, kneeling, crouching and crawling. She can have no exposure to hazards, such as unprotected heights or dangerous machinery; she can have no concentrated exposure to fumes or other pulmonary irritants. She is further limited to understanding, remembering and applying simple and routine instructions and attending and concentrating for extended periods with simple and routine tasks at work that is not at production rate pace (meaning no strict production requirements or rapid assembly line work where co-workers are side by side and the work of one affects the work of others). She can have no interaction with the public, can have occasional interaction with coworkers, but it should not be interactive, rather it should be only superficial, and occasional interaction with supervisors. She can make simple, work related decisions and can have few changes in the routine work setting.

Tr. 678. The ALJ found that Plaintiff was unable to perform past relevant work as a short order cook (DOT[2] #313.374-014) but could perform other jobs existing in significant numbers in the

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has

*Trina L. v. Kijakazi*
Civil No. 22-1032-BAH
May 10, 2023
Page 3

national economy. Tr. 685–86. Thus, the ALJ concluded that Plaintiff was not disabled. Tr. 687.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained her findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises one overarching argument on appeal: that the ALJ's RFC determination is unsupported by substantial evidence. ECF 13, at 9–26. Plaintiff raises separate issues regarding the ALJ's physical and mental RFC findings. *Id.* First, Plaintiff avers that the ALJ failed to perform a function-by-function assessment of the physical functions relevant to light work and erred by failing to assess certain functions listed at 20 C.F.R. § 416.945(b). *Id.* at 15–17. Second, with regard to mental limitations, Plaintiff contends that several of the ALJ's conclusions "are at odds with the evidence." *Id.* at 18. Specifically, Plaintiff argues that: (1) the ALJ's RFC draws an erroneous distinction between Plaintiff's abilities to interact with supervisors, co-workers, and the public, respectively; and (2) the ALJ erred by failing to address Plaintiff's ability to "consistently attend to work and remain on task" in the RFC. *Id.* at 20–26.

Defendant counters that the ALJ "ignored no significant evidence" of Plaintiff's physical limitations and "supported her functional analysis with medical and other record evidence." ECF 15, at 7. Defendant also avers that the ALJ provided a "perfectly understandable" evaluation of Plaintiff's abilities to interact with co-workers, supervisors, and the public, as well as Plaintiff's other mental limitations. *Id.* at 13.

---

explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Trina L. v. Kijakazi*
Civil No. 22-1032-BAH
May 10, 2023
Page 4

       A.       <u>The ALJ Properly Evaluated Plaintiff's Physical Limitations.</u>

      The Court first considers whether the RFC's physical limitations were supported by substantial evidence. A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a). In determining a claimant's RFC, an ALJ is required to "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Pursuant to Social Security Ruling ("SSR") 96-8p, an ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work" of which the ALJ believes the claimant to be capable. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Monroe*, 826 F.3d at 179). As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Id*. (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

      While Plaintiff acknowledges that the ALJ "clearly reached conclusions regarding [her] capacity for 'stooping' and 'crouching,'" she argues that the ALJ's RFC determination is unsupported by substantial evidence because it does not contain a function-by-function analysis, nor any conclusions, regarding Plaintiff's "ability to perform and sustain material requirements of light work that include 'sitting, standing, walking, lifting, carrying, pushing [and] pulling'" as set forth in 20 C.F.R. § 416.945(b). ECF 13, at 16–17 (brackets in original). Plaintiff's argument is unavailing for several reasons.

      As an initial matter, the ALJ's failure to perform a function-by-function analysis does not warrant remand. The Fourth Circuit has held that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id*. (quoting *Cichocki*, 729 F.3d at 177). Because Plaintiff does not explain how, if at all, the functions not analyzed by the ALJ in this case were either contested or relevant to the case's outcome, I do not find that the ALJ's failure to conduct a function-by-function analysis warrants remand.

      Moreover, a careful review of the ALJ's decision makes clear that the ALJ meaningfully considered Plaintiff's ability to fulfill the physical demands of light work. For instance, the ALJ provided a detailed summary of Plaintiff's respiratory ailments, including asthma and COPD. Tr.

679. Based upon these ailments, the ALJ gave "some weight" to a consultant who opined that Plaintiff could engage in "less than medium exertion work" and gave "little weight" to a consultant who "indicated no severe impairments," because that opinion "would completely ignore [Plaintiff's] difficulties with obesity, asthma, and COPD." Tr. 681. Indeed, the ALJ noted that while a prior SSA decision limited Plaintiff to medium exertion work, a more restrictive limitation to light exertion work had become necessary due to "a recent increase in [Plaintiff's] obesity, along with continued complaints of back pain." *Id.*

The ALJ also weighed Plaintiff's testimony of being "unable to walk for more than a couple blocks" or to stand "longer than 15 to 20 minutes" against treatment notes indicating that Plaintiff had "normal strength, normal ambulation, and a normal gait with only slight difficulties . . . ." Tr. 679. Additionally, the ALJ noted Plaintiff's limited ability to cope with "respiratory irritants" and evidence of foot problems. Tr. 682–83. Accordingly, the ALJ concluded in the RFC that, based upon these considerations, Plaintiff could have no concentrated exposure to hazards, fumes, or other pulmonary irritants. Tr. 678. The ALJ also provided climbing, balancing, stooping, kneeling, crouching, and crawling limitations to account for Plaintiff's other symptoms. *Id.*

In sum, the ALJ adequately explained the connection between the physical RFC limitations and the existing evidence sufficient for the Court to conclude that her decision is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Because Plaintiff provides no evidence of how—if at all—a more robust analysis would lead to a different result, any alleged error in formulating the physical components of Plaintiff's RFC was harmless.[3] *See Mascio*, 780 F.3d at 636; *see also Turner v. Colvin*, Civ. No. 13-761, 2015 WL 502082, at *11 (M.D.N.C. Feb. 5, 2015), *report and recommendation adopted*, Civ. No. 13-761, 2015 WL 12564210 (M.D.N.C. Mar. 6, 2015) ("Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case and, thus, such harmless error does not warrant remand.").

      B.      <u>The ALJ Properly Evaluated Plaintiff's Mental Limitations.</u>

Having determined that the physical limitations articulated in the ALJ's RFC are supported by substantial evidence, the Court turns to Plaintiff's arguments regarding the RFC's mental limitations. With regard to these limitations, Plaintiff first argues that the ALJ erred by "fail[ing] to explain why she viewed Plaintiff's ability to interact appropriately with coworkers and supervisors different[ly] from her ability to tolerate public interaction." ECF 13, at 20. Plaintiff contends that "[t]he decision lacks any narrative basis for such [a] discrepancy, and the record before this Court undermines the ALJ's conclusion." *Id.* I disagree.

To be sure, the ALJ engaged in considerable discussion of Plaintiff's history of difficulty in interacting with others. The ALJ took note of Plaintiff's testimony that "people cause her to

---

[3] It is important to note that Plaintiff carries the burden of showing how her conditions affected her ability to perform work-related functions. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that a claimant bears the burden of production and of proof during the first four steps of the disability inquiry).

feel agitated, which leads to her cussing at them or even assaultive behavior that has led to[] not only loss of employment, but criminal charges in the past." Tr. 676; *see also* Tr. 678 (noting that Plaintiff broke a turtle tank at home); Tr. 681 (noting that Plaintiff "engaged in a physical fight with her daughter"). The ALJ also acknowledged that Plaintiff's most recent job as a stower at an Amazon warehouse ended, in part, because of her inability to "deal with being around others." Tr. 678, 707.

But a careful review of the ALJ's decision reveals that the ALJ weighed evidence of Plaintiff's interactional difficulties against other evidence suggesting that Plaintiff could "interact appropriately with friends, doctors, and authority figures on a sustained basis." Tr. 676. For instance, the ALJ noted that Plaintiff "socializes and participates in leisure activities." *Id*. The ALJ also noted that Plaintiff was "cooperative and friendly" and "able to control her behavior" during psychiatric examinations. Tr. 680–81. Accordingly, the ALJ limited Plaintiff to no interaction with the public and occasional interaction with supervisors and co-workers because, while there was evidence in the record of "irritability" and "anger outbursts," Plaintiff was nonetheless "noted as able to handle interactions with providers" and could "still handle public transportation and shop."[4] Tr. 684.

Plaintiff takes issue with the ALJ's alleged failure to "explain why she believed that Plaintiff had greater ability to interact with supervisors than with the public or co-workers simply because she was able to 'handle interactions with providers.'" ECF 13, at 22 (citing Tr. 678). But, as other courts in this circuit have recognized, a claimant's interactions with treatment providers can be probative of the claimant's ability to interact within the workplace. *See, e.g.*, *Crisco v. Kijakazi*, Civ. No. 20-239, 2021 WL 4414155, at *7 (M.D.N.C. Sept. 27, 2021) (finding that an ALJ's observation that a claimant was "cooperative with treating providers . . . holds relevance [as] to whether [the claimant] can interact occasionally with" co-workers and supervisors); *Cody A. v. Saul*, Civ. No. 19-733, 2021 WL 1015813, at *7 (W.D. Va. Mar. 16, 2021) (finding that an ALJ properly limited a claimant "to no contact with the general public and occasional interaction with coworkers and supervisors" based upon the claimant's "generally benign" mental status and evidence that he "interacted well with his health care providers"). Moreover, the ALJ provided support for her differentiation of Plaintiff's ability to interact with co-workers and supervisors from her ability to interact with the public—she noted that while Plaintiff was able to "interact

---

[4] Plaintiff asserts that employers would "have no tolerance for" her behavior because the vocational expert stated that irritability and anger outbursts would render a claimant unemployable. ECF 13, at 23 (citing Tr. 735). Plaintiff appears to misconstrue the testimony of the vocational expert, who actually stated that a "physical attack" by a claimant, depending on its severity, could render the claimant unemployable. Tr. 735. But even if the vocational expert *did* find Plaintiff's behavior work-preclusive, the ALJ's limitations adequately account for this. *See, e.g.*, *Elizondo v. Kijakazi*, Civ. No. 22-145, 2023 WL 3214598, at *5 (W.D. Tex. May 1, 2023) (finding that by limiting a claimant to "occasional contact with the public and co-workers," an ALJ properly accounted for a vocational expert's testimony that the claimant's anger outbursts were work-preclusive).

appropriately" with supervisors based on her meetings with treatment providers, Tr. 676, she also threw food at a co-worker and attempted to stab a customer. Tr. 678.

In light of the ALJ's analysis, I am satisfied that her decision contains the requisite "narrative discussion describing how the evidence support[ed]" her conclusions regarding Plaintiff's interactional abilities. *Mascio*, 780 F.3d at 636. Certainly, Plaintiff disagrees with how the ALJ viewed the evidence related to this issue. But this Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

Plaintiff's final argument—that the ALJ erred by failing to address her ability to "consistently attend to work and remain on task"—is also unavailing. ECF 13, at 24. Plaintiff avers that the ALJ's assertion that Plaintiff can "pay attention and keep focus well enough to keep a schedule and make it on time to appointments" is undermined by Plaintiff's history of absenteeism and "isolat[ing] herself from her treating providers[.]" *Id.* at 24–26. To be sure, the ALJ considered evidence that Plaintiff lost a previous job due to an inability to stay on task and arrive on time, among other reasons. Tr. 678. But the ALJ balanced this evidence against Plaintiff's treating providers' observations that Plaintiff had "fair attention and concentration and an ability "to take public transportation to appointments as needed[.]" Tr. 684; *see also* Tr. 676 (noting that Plaintiff "could concentrate and stay engaged long enough to hold her end of a conversation and complete intelligence tests"). Accordingly, the ALJ concluded that Plaintiff's "usually intact attention and concentration findings . . . and generally functional activities of daily living" did not warrant any additional RFC limitations. Tr. 685. Given this, I find that substantial evidence supported the ALJ's decision not to include additional breaks or limitations related to staying on task in the RFC.

## V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge